### Williams *v.* The State.

1. It is competent for a witness to testify that the accused sent for him in order to confess to him, the accused himself having so stated to the witness.
2. A suggestion from a witness to the accused, after a confession has been freely and voluntarily made by him, that it would be better for him if he would disclose who were his accomplices, will not render inadmissible a confession as to his own guilt subsequently made by the accused to another witness.
3. The evidence warranted the verdict, and there was no error in denying a new trial.        *Judgment affirmed.*

March 19, 1894. Argued at the last term.

Indictment for burglary. Before Judge Roney. Burke superior court. December term, 1893.

Alfred Williams was charged with breaking and entering the storehouse of Wilkins, Neely & Jones, and stealing therefrom one gun and three pairs of shoes. He was convicted, and his motion for a new trial was overruled. The grounds of the motion are, that the verdict is contrary to law and evidence; and that "the court erred in allowing witness Wilkins to testify as to confessions made to him at the jail, and after certain inducements had been made to the defendant by a partner of said Wilkins," and "in allowing witness Wilkins and William E. Jones to state that they went to the jail because they had received a message from defendant."

William E. Jones testified: Defendant was arrested on Tuesday after the burglary on Saturday night. I had a talk with him; we tried to get him to tell us if he had been down in the store or not; then I had another talk with him at the jail. He sent me word by his father to come there to see him, and I went. I never offered him any inducement at all to make any confes-

sion to me.  He admitted to me that he was in the store
at time of burglary.  He told me all about how bur-
glary was committed, and that he went to the store be-
fore we closed up.  I told him that it would be better if
he told the whole thing.  I told him that the court was
sometimes lighter on parties who told it all.  I swore
that I said that to him in the committing court; but
what I have told that he told me about his committing
burglary, was first told me by him without any induce-
ments from me whatever; and then after that I told him
that the court was sometimes lighter on the party who
told it all, but I offered him no inducement to get him
to tell what he did.  He sent for me to come out there,
that he wanted to tell me all about it; and when I got
there he told me that he had sent his father for me so
that he could make to me this confession.  This pin
goes through the window-facing, and this key is inserted
in the hole; and he told me that they would go around
there on Saturday night, pretending to get water, and
pull the pin or key out and put it down over the pin this
way (indicating), and then they could go on the outside
and pull the pin out and get in that way, and then they
would close the window and key it properly and come out
the door and leave it open, so we would not get on to how
they got in.  We had had burglaries to occur, and we had
endeavored to find out how they got in, but could not.
He said that they had been in there several times; that
they got two guns, two pairs of shoes and "rashins,'
and carried them off.  I tried to get him to tell who
was with him, but he would not; and I told him if he
would come out and tell the whole thing, it might be
lighter on him, and then he gave me a list of names
who he said were in there with him.  I came back to the
store, and I found the window just as he said it was;
and I could see a little sign on the wall on the outside
where they had climbed in through the window.  He

also told me that the coat was his, and that he pulled it off so if he had to run he did not want any coat on. (The coat was identified by other witnesses as having been left in the storehouse on the night of the burglary, and as belonging to defendant.) He told me who the other parties were, and I had them arrested; but I could not find out anything against them except what he said, and I turned them loose.

W. A. Wilkins testified: I had a talk with Alfred a few days after he was arrested. I think it was the same day Jones had his conversation with him. ( Question : "What did he tell you?" Counsel for defendant here objected to Wilkins testifying to any confession made by defendant to him, on the ground that Jones had held out inducement. By the court: "If there was any promise held out to the defendant, it was to tell who the other parties were; and any admissions as to who the other parties were I don't think would be admissible, and so rule. But, according to the witness's testimony, he held out no promise to him to get any confession as to his own guilt.") Witness: I went there in response to a message that I had received, and he told me how they got in (describing the mode of entrance, etc., substantially as stated in Jones' testimony). He told me that he stole a gun, a watch and some shoes; and these articles were missed. He said that they carried the things off; that they had been in there before four or five times. We always found the door open and the window closed; it was always on Saturday night, because the store would be open until 10 or 11 o'clock, and these boys would go in there and pretend to get water and unkey this window; and if he had not told us, we would not have known anything about it yet.

G. F. Cox and R. O. LOVETT, for plaintiff in error.
W. H. DAVIS, solicitor-general, *contra*.